UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<span>AMES</span> B<span>ARTON</span>,

    Plaintiff,

v.

C<span>ITY OF</span> L<span>INCOLN</span> P<span>ARK</span>, <span>ET AL</span>.

    Defendants.

Case No. 15-cv-13362

U<span>NITED</span> S<span>TATES</span> D<span>ISTRICT</span> C<span>OURT</span> J<span>UDGE</span>
G<span>ERSHWIN</span> A. D<span>RAIN</span>

U<span>NITED</span> S<span>TATES</span> M<span>AGISTRATE</span> J<span>UDGE</span>
D<span>AVID</span> R. G<span>RAND</span>

### O<span>PINION AND</span> O<span>RDER</span> G<span>RANTING</span> D<span>EFENDANTS</span>' M<span>OTION FOR</span> S<span>UMMARY</span> J<span>UDGMENT</span> [34] <span>IN</span> P<span>ART AND</span> D<span>ENYING</span> D<span>EFENDANTS</span>' M<span>OTION FOR</span> S<span>UMMARY</span> J<span>UDGMENT IN</span> P<span>ART</span>.

## I. Introduction

This is an excessive force action against four police officers and the City of Lincoln Park. Plaintiff alleges both federal and state theories for relief. Pending before the Court is Defendants' Motion for Partial Summary Judgment [34]. For the reasons stated below, the Court will **GRANT** Defendants' Motion **IN PART** and **DENY** Defendants' Motion **IN PART**.

## II. Factual Allegations

On the night of November 21, 2013, James Barton (hereinafter "Plaintiff") and his friend Todd Daw went to the Best Damn Bar & Grill in Lincoln Park. Dkt. No. 38, p. 9 (Pg. ID 364). The men got drunk, after consuming about seven to nine

beers each. Dkt. No. 38-8, pp. 10–11 (Pg. ID 404–05). At about 1:30AM on November 22, 2013, the two men walked to the Plaintiff's home. *Id.* The Plaintiff rented a home in Lincoln Park with his girlfriend, Michelle Faulkner. *Id.*, p. 6 (Pg. ID 400). Once the two arrived at the Plaintiff's home, Plaintiff asked his girlfriend to drive Mr. Daw to his home. *Id.*, p. 11 (Pg. ID 405). Ms. Faulkner refused. *Id.* An argument ensued. *Id.* While the arguing continued, Susan Ferrante (Ms. Faulkner's daughter) called the police. *Id.* Four Lincoln Park Police Officers responded to the call and arrived at the home. Dkt. No. 38, p. 10 (Pg. ID 365).

Officers Kerr and Lasinskas arrived first. *Id.* When the officers arrived, Mr. Daw was outside of the home with Bradley Dorow (Ms. Ferrante's boyfriend). *Id.* The Plaintiff, Ms. Faulkner, and Ms. Ferrante were inside the home, yelling at each other. *Id.*; Dkt. No. 38-3, p. 12 (Pg. ID 406). Officers Kerr and Lasinskas entered Plaintiff's home and told the Plaintiff to quiet down. *Id.* Dkt. No. 38-3, p. 12 (Pg. ID 406). After a few minutes, the Plaintiff complied. *Id.*

Sometime later, Officers Pierson and Behrik arrived. Dkt. No. 38, pp. 10–11 (Pg. ID 365–66). Officers Pierson and Behrik talked to Mr. Daw and Mr. Dorow outside. *Id.* Eventually, Officer Pierson joined Officers Kerr and Lasinskas in the home. Officer Behrik remained outside with Mr. Daw and Mr. Dorow. *Id.*

According to the Plaintiff, Officers Kerr and Lasinskas grabbed the Plaintiff's hand, twisted it, and then told the Plaintiff that he was under arrest. *Id.* Plaintiff

pulled his hand away because his hand was broken and he recently had surgery that inserted a rod into his arm. *Id.* Ms. Faulkner and the Plaintiff explained the Plaintiff's injury to the officers, and warned them not to bend his arm because it was extremely painful. *Id.* Nevertheless, Plaintiff claims that Officers Kerr and Lasinskas continued to grab his hand, threw the Plaintiff to the floor, and handcuffed him. *Id.* While on the floor, the Plaintiff believes he was punched in his side and his lower back. *Id.*

Next, officers stood the Plaintiff up and proceeded to escort him out of the house. *Id.*, p. 12 (Pg. ID 367). A screen door separated the home from outside. *Id.* Plaintiff alleges that Officers Kerr and Pierson rammed the Plaintiff's head into the aluminum screen door, which caused a two-inch laceration on the Plaintiff's forehead. *Id.*

Moments later, Officers Kerr and Pierson escorted the Plaintiff to a police vehicle. *Id.* Just as the Plaintiff began to get into the vehicle, he claims that he was yanked out of the car and one of the officers choked him. *Id.* Throughout the entire altercation, Plaintiff alleges that Officer Behrik – who remained outside with Mr. Daw and Mr. Dorow – heard commotion, but did nothing. *Id.*

As a result of the force used against the Plaintiff during the arrest and placement into the police vehicle, Plaintiff claims to have suffered physical and mental injuries. *Id.* In addition to the laceration on his head, Plaintiff needed additional medical treatment on his hand and arm and suffered back pain. *Id.* Plaintiff

now spends most of his days researching remedies to help alleviate his anxiety and amplified nervousness. *Id.*, p. 13 (Pg. ID 368). In his Complaint, Plaintiff alleges three counts: (1) excessive force pursuant to 42 U.S.C. § 1983 against each officer; (2) Fourth Amendment violations against the City of Lincoln Park; and (3) gross negligence against all Defendants.

### III. Legal Standard

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C*ehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## IV. Plaintiff's Section 1983 Claims against Officer Behrik

"[Sixth Circuit] cases teach that, in order to hold Officer [Behrik] liable for the use of excessive force, [Plaintiff] must prove that [Officer Behrik] (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). In this case, the first two possibilities are not relevant. Plaintiff proceeds on a "failure to intervene" theory, alleging that Officer Behrik breached his duty of protection owed to the Plaintiff.

"Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or *had reason to know that excessive force would be or was being used*, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (emphasis). "No duty to intervene exists, however, where one officer's act of excessive force occurs so rapidly that a second officer on the scene lacks a realistic opportunity to intervene and prevent harm." *Kent v. Oakland Cty.*, 810 F.3d 384, 402 (6th Cir. 2016) (internal citations omitted).

The Defendants argue that summary judgment is proper because: (1) Officer Behrik never entered the home; (2) never participated in the arrest of the Plaintiff; (3) never used any force against the Plaintiff; and (4) did not see any use of force by

the other officers. Dkt. No. 34, p. 17 (Pg. ID 177). The Defendants' argument is factually correct, but misses the point. It is undisputed that Officer Behrik did not actively participate or supervise the application of force against the Plaintiff. However, the proper focus in a "failure to intervene" case is not what the officer did, but rather, *what the officer did not do*. *See Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir. 1973) ("[A] law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly . . . *[a]cts of omission are actionable in this context to the same extent as are acts of commission*.") (emphasis added). Therefore, facts and arguments which demonstrate that an officer did not participate in the use of force are not dispositive.

Similarly, facts and arguments that an officer did not see any excessive force, do not moot the issue of whether an officer breached his/her duty of protection. On the contrary, the Sixth Circuit discourages police officers from escaping liability by turning a blind eye to another officer's excessive force. *See Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (adopting and quoting the holding of *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) ("We believe it is clear that one who is given the badge of authority of *a police officer may not ignore the duty imposed by his office* and fail to stop other officers who summarily punish a third person *in his presence* or otherwise within his knowledge.") (emphasis added). Therefore, a duty to intervene can be triggered based on an officer's mere presence during excessive force,

-6-

regardless of whether the officer averted his eyes. *Id.* ("[P]laintiff was entitled to have his case against [the defendants] submitted to the jury upon his having offered testimony that he was beaten by unknown officers in their presence").

According to the Plaintiff, the application of excessive force occurred: (1) during his arrest inside the home; (2) upon leaving the home; and (3) during his placement into the police vehicle. Although Officer Behrik did not physically assist in Plaintiff's arrest, Behrik remained in close proximity to the home and police vehicle. Officer Behrik admits that he was close enough to hear "commotion in the house". Officer Behrik also heard "upset yelling" when Mr. Barton was placed into the police vehicle. Based on *Bruner*, Behrik's mere presence at the scene of alleged excessive force provides an avenue for the Plaintiff's "failure to intervene" claim.

Additionally, Defendants argue that although Officer Behrik heard yelling, he admitted the noise was "not unusual". Nevertheless, this fact does not entitle the Defendants to summary judgment. When the Court considers Officer Behrik's complete testimony alongside allegations that the Lincoln Park Police Department employs an unconstitutional custom, it must consider the facts in the light most favorable to the Plaintiff and draw reasonable inferences. *See Anderson*, 477 U.S. at 255. Although, yelling during an arrest might not be "unusual" to Officer Behrik, it may still be unconstitutional to ignore it. A reasonable juror could infer that such commotion was common because the police department employs an unconstitutional

custom or police. Subsequently, there is a genuine dispute of fact – whether Officer Behrik's observations rose to a level to put a reasonable officer on notice that excessive force would be or was being used. *See Turner*, 119 F.3d at 429. Therefore, because there is an issue of material fact, this Court cannot grant summary judgment to the Defendants on the Section 1983 claim against Officer Behrik.

### V. Plaintiff's State Law Gross Negligence Claim

"Michigan's governmental tort liability act, MICH. COMP. LAWS § § 691.1401 *et seq.,* provides governmental employees with immunity from tort liability for injuries they cause during the course of their employment *so long as the employee's conduct 'does not amount to gross negligence* that is the proximate cause of the injury or damage.' " *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (emphasis added) (citing MICH. COMP. LAWS §§ 691.1407(2)(c)), 691.1407(7)(a)). "[E]stablishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity". *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). However, Michigan courts have consistently "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Vanvorous v. Burmeister*, 262 Mich.App. 467, 687 N.W.2d 132, 143 (2004) (overruled on other grounds by *Grace v. Johnson*, No. 327468, 2016 WL 6269629 (Mich. Ct. App. Oct. 25, 2016)).

Put simply, Michigan courts reject artful pleading attempts to dress up an intentional tort claim as a gross negligence claim for the purpose of sidestepping governmental immunity. *See Latits v. Phillips*, 298 Mich. App. 109, 120, 826 N.W.2d 190, 197 (2012). To that end, gross negligence claims that are premised on intentional tort theories are not cognizable under Michigan law. *See Livermore,* 476 F.3d at 408 (rejecting gross negligence claim against an officer-defendant because it was "undoubtedly premised on the intentional tort of battery").

In this case, the Plaintiff alleges gross negligence against Officers Kerr, Lasinskas, Pierson, and Behrik, and also against the City of Lincoln Park. Plaintiff claims that his "gross negligence claim is premised upon the breach of the Defendants' duty to 'perform their employment activities so as not to endanger or cause harm to the Plaintiff.' " *See* Dkt. No. 38, p. 23 (Pg. ID 378) (quoting the Complaint, Dkt. No. 1, pp. 8–9 (Pg. ID 8–9)). However, despite couching his claim in terms of breach of duty, Plaintiff is essentially alleging an intentional, offensive touching – which is barred by *VanVorous*.

The Complaint serves as proof that the Plaintiff's proper cause of action is for intentional battery, and not negligence. The allegations alleged in the Complaint describe harm caused by the Defendants "grabb[ing]", "twist[ing]", "forc[ing]", "kick[ing]", "stomp[ing]", and "beat[ing]" the Plaintiff. Each verb that the Plaintiff uses to describe the Defendants' actions is an intentional touching. Therefore,

Plaintiff's gross negligence is actually premised on the intentional tort of battery, and cannot succeed. *See Smith v. Stolberg*, 231 Mich. App. 256, 258–59, 586 N.W.2d 103, 104–05 (1998) ("While plaintiff couches his claim in terms of a breach of defendant's duty 'not to engage in disruptive behavior, not to speak to opposing parties in a case in which defendant is engaged as counsel, and not to touch or strike members of the opposite parties' family,' plaintiff is essentially alleging an intentional, offensive touching. Therefore, plaintiff's proper cause of action is for the intentional tort of battery, and not negligence. Accordingly, the trial court properly granted summary disposition in favor of defendants with regard to plaintiff's negligence claim.") (internal citations omitted).

  A. *Bell v. Porter*

Plaintiff's strongest case in support of his claim for gross negligence is *Bell v. Porter*, 739 F. Supp. 2d 1005 (W.D. Mich. 2010) – which is not binding on this Court. Nevertheless, *Bell* is distinguishable on both the facts and on the pleadings. The Plaintiff in *Bell* was a female, double amputee with two prosthetic legs. *Id.* at 1009. Bell alleged that a police officer caused her to fall backwards off of a public transportation bus. *Id.* at 1012. At issue in *Bell* was whether the cause of the fall was intentional or reactive, and whether the officer knew the Plaintiff was handicapped. *Id.* Based on the Plaintiff's disability and the allegations in her Complaint, the *Bell*

Court held that Bell's gross negligence claims were independent and distinct from her claims of intentional, offensive touching. *Id.*

The facts in this case are simply not as unique as the facts in *Bell*. In this case, the Plaintiff suffered from an injured right hand and arm. However, the Plaintiff's injury does not give rise to a separate cause of action, nor does his injury rise to the level of a handicap or a disability. In *Bell*, the Plaintiff's claim for relief relied on her status as a double amputee. As a result, Bell brought an action under the Michigan Persons With Disabilities Civil Rights Act in addition to her Section 1983 claim. *Id.* at 1016. Therefore, it was Bell's status as a disabled person that gave rise to her gross negligence claim. Because the Plaintiff is not disabled and because his injury does not form the basis of any of his claims, the Plaintiff cannot use his injury to separate his gross negligence claim from his excessive force claim.

Additionally, the pleadings in this case distinguish it from *Bell*. At the outset, Bell's complaint charged the Defendants with breaching their duty to "treat plaintiff with respect and dignity as may be consistent with her security," *inter alia*. *Id.* at 1015. At the time of filing, Bell plead allegations of gross negligence that were based on her status as a disabled person and distinct from her allegations of excessive force. *Id.* The Plaintiff's pleadings are dissimilar.

In this case, the Plaintiff attempts to supplement his Complaint with portions of Bell's complaint. But Plaintiff's attempt is futile. In his Response to the

-11-

Defendants' Motion for Partial Summary Judgment, the Plaintiff quotes the allegations that were plead in *Bell* and summarily asserts, "[t]hese duties were certainly breached by the Defendant's in the instant action." *See* Dkt. No. 38, p. 23 (Pg. ID 378). Plaintiff hopes that referencing the language in Bell's complaint will somehow transform his own Complaint. However, Plaintiff's post-hoc attempt to dress up his complaint with Bell's complaint is the type of "artful pleading" that Michigan courts explicitly reject. *See Latits v. Phillips*, 298 Mich. App. 109, 120, 826 N.W.2d 190, 197 (2012) ("[P]laintiff cannot avoid the protections of immunity by 'artful pleading.'"). Therefore, *Bell* is inapposite.

### B. *Wells v. City of Dearborn Heights*

Additionally, at oral argument, the Plaintiff relied on *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 642 (6th Cir. 2013). Plaintiff's reliance on *Wells* is misplaced because the holding in *Wells* is narrow and not supported by the facts in this case. *Wells* discusses but does not explicitly adopt the holding from *Philpott v. City of Portage*, No. 4:05 CV 70, 2006 WL 2385316, at *1 (W.D. Mich. Aug. 17, 2006) ("It is true that a federal district court in Michigan has recognized a cause of action for gross negligence under Michigan law where an officer fails to intervene on behalf of an arrestee being subjected to excessive force."). *Wells* is narrow because it only speaks to gross negligence claims that proceed on a failure to intervene theory. In *Philpott,* the court denied summary judgment to police

officers who ignored an arrestee's repeated and continuous complaints that her handcuffs were too tight.

Because Plaintiff only alleges a failure to intervene claim against Officer Behrik, *Wells* and *Philpott* can only speak to gross negligence as it applies to Officer Behrik. Furthermore, *Wells* distinguished *Philpott* because the officers in *Philpott* ignored "*ongoing conduct*". *Id.* at 642 (emphasis in original); *see also Philpott*, 2006 WL 2385316, at *1 ("During the next hour or so, [the Plaintiff] complained repeatedly and loudly to Defendants that the handcuffs were too tight and that her left hand and fingers were going numb."). Similarly, *Philpott* is distinguished on the present facts because there was no "ongoing conduct". In this case, Officer Behrik heard two instances of commotion: shortly after arriving at Plaintiff's home and when Plaintiff was being placed in the police car. Two, separate instances of non-specific commotion do not rise to the level of repeated complaints of pain for over an hour – which *Philpott* describes. Therefore, *Wells* is distinguishable.

Neither *Wells* nor *Bell* offer refuge to the Plaintiff. Because the Plaintiff is attempting to transform an intentional, offensive touching claim into a claim for gross negligence, Michigan law bars the claim. Thus, Defendants are entitled to summary judgement on Plaintiff's gross negligence claim.

## VI. Plaintiff's Section 1983 Claim Against the City of Lincoln Park

Plaintiff's § 1983 claim against the City of Lincoln Park "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010). Plaintiff must make this showing by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) *the existence of a policy of inadequate training or supervision*; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' " *Id.* (quoting *Monell*, 436 U.S. at 694).

To succeed on a failure to train or supervise claim in the Sixth Circuit, Plaintiff must prove the following:

> (1) the training or supervision was inadequate for the tasks performed;
> (2) the inadequacy was the result of the municipality's deliberate indifference; and
> (3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 Fed. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). There are two ways to demonstrate deliberate indifference. Plaintiff could "show prior instances of unconstitutional conduct demonstrating that the [City of Lincoln Park] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). In the alternative, Plaintiff could show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . ." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).

In this case, the Plaintiff proceeds on a failure to train/supervise claim. Subsequently, the Plaintiff must demonstrate: (1) failure to train or supervise, (2) deliberate indifferentness, and (3) relatedness. *See Ellis ex rel. Pendergrass*, 455 F.3d at 700. Thus, if the evidence presents sufficient disagreement of the failure to

train/supervise factors, summary judgment is improper. *See Anderson*, 477 U.S. at 251–52.

The Defendants argue that the Plaintiff cannot establish the prerequisite to municipal liability under § 1983 because the Plaintiff "can only support his claim with the allegations regarding his particular incident on November 22, 2013." *See* Dkt. No. 34, p. 22 (Pg. ID 182). The Defendants are incorrect. Additionally, there is an issue of material fact with respect to each of the three prongs required for a failure to train or supervise theory.

First, both officers Kerr and Lasinskas admit that they cannot recall the name of their 2013 supervisor. Dkt. No. 38-5, p. 5 (Pg. ID 426); Dkt. No. 38-6, p. 5 (Pg. ID 448). Plaintiff uses this fact to allege that the City of Lincoln Park fails to properly supervise its officers. Second, Officer Lasinskas admits to having two citizen complaints and one verbal reprimand against him. Dkt. No. 38-6, pp. 4–5 (Pg. ID 448–49). However, Officer Lasinskas could not recall if he suffered consequences or what the final dispositions were for the complaints and the reprimand. *Id.* Additionally, Officer Kerr admitted that he was unaware of the last time that he had *any* training on the use of force. Dkt. No. 38-5, p. 5 (Pg. ID 426). On these facts, a reasonable juror could infer that the City of Lincoln Park fails to punish wrongdoing officers and fails to adequately train on the use of force. Those inferences give rise to disagreement about whether the City of Lincoln Park failed to train its employees

to handle recurring situations. Therefore, there is an issue of material fact regarding whether the City of Lincoln Park is deliberately indifferent to properly training and supervision. Third, because force was used against the Plaintiff, a jury could find that the inadequate training on the use of force was related to the Plaintiff's injuries.

After drawing reasonable inferences from those facts, in the light most favorable to the Plaintiff, there is an issue of material fact regarding whether the City of Lincoln Park failed to properly supervise or train its officers. Subsequently, the evidence is not so one-sided that the Plaintiff must prevail on this issue as a matter of law. *See Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. Therefore, this Court cannot grant summary judgment to the Defendants on this issue.

## VII. Conclusion

For the reasons discussed above, the Court will **GRANT** Defendants' Motion for Partial Summary Judgment [34] with respect to Plaintiff's state-law gross negligence claims. The Court will **DENY** Defendants' Motion for Partial Summary Judgment with respect to Plaintiff's Section 1983 claims against Officer Behrik and Plaintiff's Section 1983 claims against the City of Lincoln Park.

**SO ORDERED.**

Dated: December 20, 2016

Detroit, MI

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 20, 2016, by electronic and/or ordinary mail.

/s/Tanya Bankston<br>Case Manager, (313) 234-5213